UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


| | |
|---|---|
| **CHARLIE BALL (#459919)** | **CIVIL ACTION** |
| **VERSUS** | |
| **SGT. JAMES GUIDRY, ET AL.** | **NO. 12-0729-SDD-RLB** |


## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE **JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on November 20, 2013.

				                                      _____
							RICHARD L. BOURGEOIS, JR.
							UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHARLIE BALL (#459919)                                              CIVIL ACTION

VERSUS

SGT. JAMES GUIDRY, ET AL.                                           NO. 12-0729-SDD-RLB

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motions for Summary Judgment (Rec. Docs. 26 and 31). These motions are opposed.

The pro se plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Msgt. James Guidry, Lt. Howard Brown, Lt.Col. Carlton Nettles, Col. Ray Vittorio, and Ass't Warden Tim Delaney, complaining that the defendants violated his constitutional rights on January 18, 2012, when defendants Guidry and Brown subjected him to excessive force and the remaining defendants stood by and failed to intervene.[1] The plaintiff also complains that the actions of the defendants were undertaken in retaliation for the plaintiff having filed an administrative grievance against prison security officers.

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's Master Prison Record, Location Sheet and Conduct Report, a certified copy of excerpts from the plaintiff's medical records, a certified copy

---

1. In his Complaint, the plaintiff alleges that certain of the defendants have ranks different from that stated in the defendants' Motions for Summary Judgment. This discrepancy, however, is not relevant to this proceeding.

of the LSP Camp C Gas Logbook for the date January 18, 2012, a certified copy of the plaintiff's administrative remedy proceedings, and the affidavits of Rhonda Z. Weldon and defendants James Guidry and Howard Brown.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corporation v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corporation v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must

review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992).

In his Complaint, the plaintiff alleges that on January 18, 2012, an LSP security officer (who the plaintiff identifies in the Complaint as "Sgt. Lee") was escorting the plaintiff back to his cell from a medical call-out when the plaintiff was approached by defendant Lt. Howard Brown and threatened with retaliation if the plaintiff did not voluntarily withdraw an administrative grievance which the plaintiff had previously filed against defendants Brown and Nettles. After the two individuals exchanged words, Sgt. Lee escorted the plaintiff back to the plaintiff's cell. Upon arrival at the plaintiff's housing unit, defendant Msgt. Guidry was present and instructed the plaintiff to wait outside the cell while defendant Guidry conducted a search thereof. During the subsequent search, defendant Guidry allegedly confiscated some of the plaintiff's "legal books, law cases and all of [the plaintiff's] personal books and magazines." After completing the search, defendant Guidry ordered the plaintiff to enter the cell, and as the plaintiff "slowly began to walk in the cell," defendant Guidry allegedly pushed the plaintiff "into the bars." In response to this action, the plaintiff turned to confront the defendant, stating "what the f*ck you do that for," whereupon the defendant wrestled the plaintiff to the floor and, according to the plaintiff, choked the plaintiff with a forearm and "stomped" on the plaintiff's leg restraints until the left leg restraint came loose. The plaintiff was then confined within the cell, and the restraints were removed by defendant Guidry, whereupon the defendant "activated his beeper" to summon other officers. In response to the beeper, defendants Nettles, Vittorio, Delaney and Brown arrived at the cell tier, and defendant Guidry falsely reported to the officers

that the plaintiff had refused to relinquish the books which had been taken from the cell. The plaintiff also asserts that defendant Vittorio made a general comment to defendant Delaney that the plaintiff was "the [inmate] who's [sic] sister keeps calling every day," and also stated to the plaintiff that they had "some gas" for the plaintiff. According to the plaintiff, defendant Brown then ordered the plaintiff to come to the bars of the cell to be restrained, but as the plaintiff attempted to do so, defendant Brown sprayed a chemical agent into the plaintiff's face. The plaintiff alleges that defendant Brown then again ordered the plaintiff to approach the bars and again sprayed the plaintiff with chemical agent when the plaintiff attempted to do so. Finally, the plaintiff alleges that the defendants thereafter placed him in restraints and escorted him to the shower cell at the end of the tier where defendant Brown again twice sprayed chemical agent into the plaintiff's face after ordering the plaintiff to approach the bars of the shower cell. According to the plaintiff, defendants Nettles, Vittorio, Delaney and Guidry observed the alleged use of force by defendant Brown but did nothing to stop the alleged wrongful conduct.

In addressing the plaintiff's claims, the Court notes initially that it is unclear from the plaintiff's Complaint whether he has named the defendants in their individual and/or their official capacities. However, in light of the liberality with which this Court interprets the pleadings of pro se litigants, *Haines v. Kerner*, 404 U.S. 519, 521 (1972), the Court interprets the plaintiff's Complaint as naming the defendants in both capacities. Notwithstanding, § 1983 does not provide a federal forum for a litigant who seeks recovery of monetary damages against either a state or its officials acting in their official capacities because these officials are not seen to be "persons" under § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989). Additionally, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a

suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, the plaintiff's claim for monetary damages asserted against the defendants in their official capacities is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against state officials in their individual capacities, seeking to impose liability for actions taken by the officials under color of state law, is not treated as a suit against the state. *Id.*

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, the defendants first seek dismissal of the plaintiff's claims of threats of retaliation and verbal harassment. In this regard, the defendants are correct that allegations of threats and verbal abuse, without more, do not constitute claims arising under § 1983. Specifically, "[m]ere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.), *cert. denied*, 464 U.S. 998 (1983); *Burnette v. Phelps*, 621 F.Supp. 1157, 1162 (M.D. La. 1985); *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973). The plaintiff's allegations against the defendants regarding threats of retaliation and verbal abuse, therefore, are insufficient to state a claim of constitutional dimension and should be dismissed.

In further response to the plaintiff's allegations, defendants Nettles, Vittorio and Delaney next assert that the plaintiff has failed to exhaust administrative remedies relative to his claims asserted against them. Specifically, these defendants assert that the plaintiff did not explicitly state, in his pertinent administrative grievance, that the defendants stood by and failed to intervene while defendant Brown utilized chemical irritant spray against him on January 18, 2012.

Pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions.[2] This provision is mandatory and applies broadly to "all inmate suits about prison life". *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *Johnson v. Johnson*, *supra*, 385 F.3d at 516, *quoting Porter v. Nussle*, *supra*, 534 U.S. at 525. Further, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this purpose. *Id.*

Upon a review of the administrative grievance which the plaintiff filed relative to the claims asserted in this proceeding, the Court concludes that the defendants' exhaustion argument should be rejected. Specifically, a review of the referenced grievance reflects that the plaintiff complained therein that defendants Nettles, Vittorio and Delaney came to his cell tier with defendant Brown and were present when defendant Brown repeatedly sprayed a chemical irritant

---

2. 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

into the plaintiff's cell. Specifically, the grievance states that, after the initial altercation between the plaintiff and defendant Guidry:

> He [defendant Guidry] took the restraints off and I said "Call Rank." He said you want Rank mother f*cker wait a minute. He hit his beeper and Mr. Nettles came first and said "you want to f*ck over somebody?["] and walked off talking on his radio. A few minutes later Col. Victorio, the Warden [Delaney] and Lt. Brown came to the cell. The Warden just looked but never said anything. Col. Victorio asked Sgt. Guidry what happened and he said I refused to give him my books that he had sitting on the hall. Lt. Brown said "that's Charlie Ball." Col. Victorio said, "oh, you're Charlie Ball["] and said to the Warden "that's the one who's sister keeps calling every day. Well, we got some gas." Lt. Brown came back to the cell and said come to the bars to be restrained and when I did he sprayed me. I turned around and he said oh, you don't want to come to the bars and he sprayed me again. I couldnt see or breath. I fell to the floor. He closed the door to the booth part of the cell and said let him sit in it a minute.... About 5 min[ute]s later they came back, restrained me and put me in the shower fully restrained. I heard Lt. Brown and Sgt. Guidry tell me to come to the bars to be unrestrained so I could take a shower. I couldn't see. Lt. Brown said you want to file and lie? File on this and sprayed me in my mouth with mace. I turned around and when I looked back his way I was sprayed again.

(Rec. Doc. 31-3 at 76-77). Based upon this recitation of facts contained in the plaintiff's administrative grievance, the Court finds that the plaintiff provided adequate notice to the defendants that he was making a claim therein relative to the wrongdoing of each of the officers who were present on the cell tier on January 18, 2012. Accordingly, the defendants' motion should be denied relative to the issue of administrative exhaustion.

Finally, the defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims asserted against them. Specifically, the defendants assert that the plaintiff will be unable to present evidence sufficient to establish that the defendants participated in any violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first

step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[3]

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court concludes that the defendants' motions should be granted in part and denied in part, such that the plaintiff's claim relative to the use of chemical agent on the referenced date should be allowed to proceed. Specifically, the Court finds that the plaintiff's allegations and evidentiary showing relative to this claim are sufficient to overcome the defendants' assertion of qualified immunity.

---

3. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the *Callahan* Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

Addressing first the plaintiff's claims of excessive force, he asserts (1) that defendant Guidry improperly pushed him "into the bars" and then reacted with excessive force when the plaintiff responded in a confrontational manner, and (2) that defendant Brown improperly utilized a chemical agent against the plaintiff on multiple occasions, without provocation or justification, while the remaining defendants stood by and failed to intervene. In this regard, the law is well-settled that a use of force is excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Although the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force (provided that such force is not of a sort "repugnant to the conscience of mankind"), *Hudson v. McMillian*, *supra*, 503 U.S. at 10, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7. In addition, a defendant security officer may be found responsible for a failure to intervene and take reasonable measures to protect an inmate from another officer's excessive use of force. The test is whether the observing officer had actual knowledge of a substantial risk of harm to the inmate yet disregarded that risk by failing to take reasonable measures to prevent the resulting harm. *See*

*Luken v. Lynaugh,* 98 F.3d 1339, *4 (5th Cir. 1996) ("A convicted inmate's failure-to-protect claim is evaluated under the Eighth Amendment's 'deliberate indifference' standard").

Applying the foregoing standard in the context of the initial dispute between the plaintiff and defendant Guidry, the Court finds that the plaintiff has failed to make a showing sufficient to overcome defendant Guidry's assertion of qualified immunity in connection with this claim. The plaintiff acknowledges that after the search of his cell on the morning of January 18, 2012, he responded "slowly" to defendant Guidry's order to enter the cell, and this prompted the defendant to give the plaintiff a push "into the bars." The plaintiff does not assert that he suffered any harm or injury as a result of this initial push, and the Court is unable to conclude that this "push" amounted to excessive force within the context of the Eighth Amendment. The plaintiff further concedes that, in response to this push, he turned and directly confronted defendant Guidry and made a statement which can only be described as aggressive and contentious. In an affidavit attached to the instant Motions for Summary Judgment, defendant Guidry avers that the plaintiff "charged" in the defendant's direction. *See Rec. Doc. 39 at p. 2.* On these facts, it was not objectively unreasonable for defendant Guidry to respond to the potentially dangerous confrontation by wrestling the plaintiff to the floor and by utilizing force to subdue the plaintiff and to bring the situation under control. In the context of excessive force claims, the courts have long recognized that great deference is due to prison officials who are dealing with potentially dangerous situations, and "prison officials often must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Lawrence v. Knighten*, 30 F.3d 1490, *2 (5th Cir. 1994). Although the plaintiff asserts that, in responding to the plaintiff's actions, the defendant utilized a forearm to "choke" the plaintiff and also "stomped" on the plaintiff's restraints, the plaintiff does not assert that the defendant

wantonly kicked or punched the plaintiff or that the alleged use of force was of any significant duration. On this showing, the Court concludes that the plaintiff has failed to establish that the force utilized by defendant Guidry in this instance was applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. Accordingly, defendant Guidry is entitled to summary judgment in connection with this claim of excessive force.

Notwithstanding the foregoing, the Court arrives at a different conclusion in connection with the plaintiff's claim that he was thereafter subjected to excessive force by defendant Brown while the remaining defendants stood by and failed to intervene. Specifically, the plaintiff asserts in a sworn statement that defendant Brown repeatedly ordered the plaintiff to come to the bars of the cell to be restrained and that, on each occasion, when the plaintiff attempted to comply, the defendant sprayed him in the face with a chemical agent, causing great discomfort which required medical attention on that date and which prompted the plaintiff to seek additional medical attention for two weeks thereafter. In response, the defendants have presented affidavits attesting that defendant Brown utilized only a single burst of chemical agent into the plaintiff's cell, and then only in response to the plaintiff's repeated refusal to obey direct orders to relinquish leg restraints which the plaintiff still allegedly had in his cell. These competing assertions present issues of credibility which may not be resolved on motion for summary Judgment.[4] Further, although the defendants point to the alleged minimal nature of the plaintiff's reported injuries as justification for the grant of summary judgment, the law is clear that minimal

---

4. The Court notes that the defendants assert in their supporting Memorandum that only .56 grams of chemical agent were utilized during the incident involving the plaintiff on January 18, 2012. *See* Rec. Doc. 39 at p. 6. A review of the defendants' Exhibit C, however, attached to the defendants' Memorandum, suggests that the correct amount utilized was in fact 56 grams of chemical agent. *See* Rec. Doc. 31-3 at p. 34.

injuries alone do not justify dismissal. *See Wilkins v. Gaddy, supra*, 559 U.S. at 38. *See also Comeaux v. Sutton,* 496 Fed. Appx. 368, 371 (5th Cir. 2012) (noting that the plaintiff's minimal injuries, described as "a bruised lip" and "two superficial scrapes," did not relieve the defendants of liability for excessive force); *Brown v. Jones*, 471 Fed. Appx. 420 (5th Cir. 2012) (finding that the plaintiff's claim of injury was sufficient to overcome the defendants' motion for summary judgment). This is particularly true where, as here, accepting the plaintiff's sworn version of events as true, the plaintiff was within his cell and was offering no justification for any use of force against him. The plaintiff was seen by a medical officer on the date of the confrontation and also sought medical attention thereafter, on January 20, 22, 23, 26 and 31, 2012, respectively. The records from these consultations reflect that the plaintiff complained of having been sprayed four (4) times by defendant Brown and of experiencing generalized physical complaints resulting from the referenced confrontation. Accordingly, summary judgment should be denied relative to the plaintiff's claim of excessive force and failure to protect arising from the use of chemical agent on January 18, 2012.

In addition to the foregoing, the plaintiff asserts that the actions of the defendants were motivated by retaliatory animus in response to the plaintiff having filed one or more administrative grievances against prison security officers and/or to his sister having called the prison to make complaints regarding the plaintiff's treatment. In this regard, the taking of action against an inmate in retaliation for the inmate's exercise of First Amendment constitutional rights is a violation of the inmate's constitutional rights. *See Flores v. Boecker*, ___ Fed. Appx. ___, 2013 WL 3092011 (5th Cir. June 20, 2013), *citing Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir.), *cert. denied*, 476 U.S. 1117 (1986). Specifically, prison officials are not allowed to retaliate against an inmate because of the inmate's exercise of his right to complain to

supervisory officials about the alleged wrongful conduct of prison security officers.  However, inasmuch as claims of retaliation are not favored, it is the plaintiff's burden to provide more than mere conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred.  This places a significant burden on the inmate....  The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.

*Woods v. Smith*, 60 F.3d. 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996).  Further, in order to sustain a showing of a constitutional violation, the plaintiff must assert more than a *de minimis* or inconsequential retaliatory adverse act.  *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir.), *cert. denied*, 549 U.S. 1038 (2006).

Based on the foregoing, the Court concludes that there is an insufficient basis for a finding of retaliatory motivation in this case.  Although the plaintiff asserts that defendant Brown approached the plaintiff outside of the plaintiff's housing unit on the morning of the incident and subjected the plaintiff to verbal threats and harassment, urging the plaintiff to withdraw an administrative grievance which the plaintiff had filed, there is no suggestion that the subsequent physical confrontation between the plaintiff and defendant Guidry, which occurred *after* the plaintiff arrived back at the unit, was motivated by retaliatory animus.  Instead, it is undisputed that the confrontation with defendant Guidry occurred during or immediately after a search of the plaintiff's cell, during which search the defendant allegedly confiscated some of the plaintiff's property and after which search the plaintiff admittedly physically confronted defendant Guidry, using aggressive and confrontational words and thereby providing independent justification for the use of force.  Nor is there a sufficient showing that the subsequent use of force by defendant Brown, which occurred after the initial use of force by

defendant Guidry and which was allegedly witnessed by the other defendants, was motivated by retaliatory intent.  In this regard, it is undisputed that defendant Guidry activated his beeper and called the other defendants to the scene and that defendant Guidry reported to the other defendants that the plaintiff had engaged in aggressive and disobedient conduct.  It is as likely, therefore, that the subsequent use of force by defendant Brown was motivated, not in retaliation for the plaintiff's grievance activities, but instead by the reported misconduct.  Although the defendants purportedly made statements such as, "that's Charlie Ball" and "that's the one who's sister keeps calling every day," these statements fail to reflect that the defendants' actions were motivated solely by retaliatory intent in response to the plaintiff's exercise of his constitutional right to file grievances or, more importantly, that "*but for*" the plaintiff's exercise of his constitutional rights, the alleged use of force would not have occurred.  Accordingly, the Court finds that the plaintiff has failed to present facts which establish a "chronology of events from which retaliation may plausibly be inferred."  For this reason, summary judgment should be granted to the defendants relative to the plaintiff's claim of retaliation.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline to exercise supplemental jurisdiction over a plaintiff's state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, considering the allegations of the plaintiff's Complaint and the recommendation of the Court that all of the plaintiff's claims be dismissed except his claim

pertaining to the alleged use of chemical agent on January 18, 2012, the Court recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims and that the defendants' Motions for Summary Judgment (Rec. Doc. 26 and 31) be granted in part, dismissing the plaintiff's claim of excessive force asserted against defendant James Guidry, dismissing the plaintiff's claims of verbal abuse and retaliation asserted against all defendants, and dismissing the plaintiff's claims asserted against the defendants in their official capacities.  It is further recommended that this matter be referred back to the Magistrate Judge for further proceedings in connection with the plaintiff's claim that defendant Howard Brown violated the plaintiff's Eighth Amendment rights by subjecting the plaintiff to excessive force on January 18, 2012, and that defendants Carlton Nettles, Ray Vittorio, Tim Delaney and James Guidry were deliberately indifferent to the plaintiff's health or safety when they stood by and failed to intervene in response to defendant Brown's alleged wrongful conduct.

Signed in Baton Rouge, Louisiana, on November 20, 2013.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**